NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NATHAN B. ROGUT, *Plaintiff/Appellant,*

*v.*

CITY OF SURPRISE, *Defendant/Appellee.*

No. 1 CA-CV 23-0740

FILED 08-13-2024

Appeal from the Superior Court in Maricopa County
No. CV2023-051392
The Honorable Steven C. Moss, Judge

**AFFIRMED**

COUNSEL

Nathan Rogut, Scottsdale
*Plaintiff/Appellant*

Jellison Law Offices, PLLC, Scottsdale
By James M. Jellison
*Counsel for Defendant/Appellee*

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding
Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

**M c M U R D I E**, Judge:

**¶1**　　　　Plaintiff Nathan Rogut appeals from the superior court's orders dismissing his complaint, denying his other requests for relief, and denying his motion for reconsideration. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　This case started from a family law dispute between Rogut and his ex-wife that led to criminal prosecutions against Rogut for violating protective orders.

**¶3**　　　　On April 17, 2023, Rogut sued the City of Surprise ("City") and many other defendants, including his ex-wife, his ex-wife's boyfriend, City police officers, City prosecutors, City and Maricopa County Superior Court judges and commissioners, Maricopa County, the State of Arizona, and the State's Attorney General. Rogut sued the City under A.R.S. § 1-602 (Parents' Bill of Rights), A.R.S. § 38-260 (beneficiaries of bond), breach of contract, and "for claims arising in tort." Rogut imputed liability to the City for the alleged actions of a judge, prosecutors, and police officers. Rogut sued the other defendants for several claims, including breach of contract, defamation, intentional infliction of emotional distress, negligence, obstruction of criminal investigations or prosecutions, false reporting to law enforcement, perjury, public records tampering, malicious prosecution, and actions under A.R.S. §§ 1-602 and 38-260, and 42 U.S.C. § 1983.

**¶4**　　　　The common thread in Rogut's complaints was that the defendants' illegal conduct deprived him of his constitutional parenting rights. Rogut sought damages and requested "more time to amend the complaint to include additional Defendants and, if necessary, enumerate each individual cause of action and claim for relief for each defendant." On May 16, 2023, Rogut mailed the City the notice of claim, the summons, and the complaint.

**¶5**　　　　The City moved to dismiss the complaint. First, the City argued that Rogut violated A.R.S. § 12-821.01, which it argued required Rogut to submit the notice of claim to the City before suing and within 180 days of the claims' accrual. Second, the City argued it was not vicariously liable for actions against City judges, and the City judge and prosecutors were immune from liability. Third, the City asserted that A.R.S. § 12-821's one-year statute of limitation barred Rogut's claims against the City arising from police officers' actions. Finally, the City asserted that Rogut failed to allege facts supporting any cause of action.

2

**¶6** Rogut responded. He argued that he had pled sufficient factual allegations and alternatively requested leave to amend his complaint.

**¶7** Meanwhile, Rogut requested service accommodations. He conceded that several defendants had not received a copy of the summons or complaint. Rogut requested "that the Court waive individual service for Defendants appearing as individuals and in their official capacity" and that the court accept service by email. He also asked the court to waive costs and filing fees because he was a self-represented litigant. Rogut also moved for sanctions, or an order that the City follow ethical rules, and Rogut moved for an order to show cause for failure to disclose evidence. He filed another motion requesting more time to serve the other defendants and fee waivers.

**¶8** In August, the superior court held a status conference.[1] Rogut argued he had served the City,[2] the State, and the County by emailing and mailing the complaint and notice of claim, but he admitted he had served no individual defendant. Rogut explained he thought sending certified mail was sufficient service for all defendants, and now he needed more time to effect service lawfully.

**¶9** Before the court ruled on any of the above motions, Rogut moved for declaratory relief and a default judgment. He sought orders about legal decision-making, parenting time, and property possession, a protective order for his child against his ex-wife, an order appointing him the sole conservator of his child's estate, and over $20 million in damages from the City, Maricopa County, and the State.

**¶10** The superior court denied Rogut's service accommodation requests for lack of good cause. The court dismissed the complaint without prejudice to all defendants except the City and its employees "for lack of proper or timely service of process."

**¶11** The court dismissed the complaint with prejudice for the City and its employees. It found that the City, its judges, and prosecutors were

---

[1] Because of conflicts, a judge visiting from Mohave County received the case.

[2] The City maintained Rogut did not serve the entity lawfully, but it voluntarily appeared to contest the complaint. On appeal, Rogut conceded that he served no defendant lawfully. *See generally* Ariz. R. Civ. P. 4.1.

immune from Rogut's claims. It also reasoned that because Rogut submitted his notice of claim in May 2023, he could only complain of actions taken after November 2022. *See* A.R.S. § 12-821.01(A). The court found that the only actions allegedly taken after November were "by a judge and prosecutor in the performance of their duties."

**¶12** The court also noted that Rogut submitted his notice of claim after filing the complaint, which was untimely. Moreover, because of the one-year statute of limitation for claims against a public entity or employee, Rogut's claims from actions before April 17, 2022, were barred. *See* A.R.S. § 12-821.

**¶13** The court assumed without deciding that the City had vicarious liability for judicial officers. The court found "that the bulk of Plaintiff's claims [against the City] [fell] foul of the one-year statute of limitations, that all of Plaintiff's claims [against the City] [fell] foul of the notice of claim statute, and that all claims as to [City] judicial officers and prosecutors [were] barred by the immunity defenses." The court denied Rogut's other requests for relief.

**¶14** Rogut moved for reconsideration, which the court denied. The court entered a final judgment under Arizona Rule of Civil Procedure 54(c), and Rogut appealed. We have jurisdiction to review the dismissal of the claims against the City and its employees under A.R.S. §§ 12-120.21(A)(1), 12-2101(A)(1).

## DISCUSSION

**¶15** We review the superior court's dismissal of a complaint for failure to state a claim *de novo. Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). We accept the complaint's well-pled factual allegations, and all reasonable inferences from the facts, as true. *Id.* at 356, ¶ 9. Here, dismissal of the complaint was appropriate if Rogut "would not be entitled to relief under any interpretation of the facts susceptible to proof." *See id.* at 356, ¶ 8.

## A.    Immunity Barred Rogut's Claims Against the City, the Judge, and the Prosecutors.

¶16    Rogut contests the court's findings that the City, the judge, and the prosecutors were immune from liability in the suit.[3]

¶17    Under A.R.S. § 12-820.01, a public entity is not liable for its employee's conduct if the employee exercises "a judicial or legislative function." And judges have "absolute immunity for acts performed in their official capacities." *Widoff v. Wiens*, 202 Ariz. 383, 386, ¶ 9 (App. 2002); *see also Burk v. State*, 215 Ariz. 6, 9, ¶ 7 (App. 2007) ("Judges are absolutely immune from damages lawsuits for their judicial acts."). And prosecutors are immune from civil liability when they act in their official capacity, within the scope of their authority, and in a quasi-judicial capacity. *State v. Superior Court (Ford)*, 186 Ariz. 294, 297 (App. 1996). Initiating a prosecution, conducting discovery, and presenting a case on behalf of the State are quasi-judicial functions. *See id.* at 297-98.

¶18    Rogut alleged that the City's prosecuting office committed perjury when filing criminal complaints, and the City court "violated [Rogut's] constitutionally protected rights and/or committed public records tampering" when adjudicating the matters. Rogut cited when prosecutors filed criminal complaints, filed disclosures for trial, and submitted motions and pleadings to the court. And Rogut cited instances when the City court ruled on motions, held trials, and entered judgments. The conduct alleged in the complaint fell within the scope of judicial immunity as the prosecutors and the court acted in a judicial or quasi-judicial capacity and within their authority. *See Widoff*, 202 Ariz. at 386, ¶ 9; *Ford*, 186 Ariz. at 297-98.

¶19    Rogut's only immunity argument on appeal is that A.R.S. § 1-601 *et seq.* (Parents' Bill of Rights) limits immunity application. Rogut claims that despite immunity, he "has a statutory right to file claims against

---

[3]    The superior court assumed without deciding that the City could be liable for its judicial employees' conduct. So, for our analysis, we will do the same. *But see Hernandez v. Maricopa County*, 138 Ariz. 143, 146 (App. 1983) (The county was not liable under *respondeat superior* for a justice of the peace's conduct because the county had no power to control the individual, and therefore, there was "no master-servant or principal-agent relationship between these separate branches of government.").

any governmental actor and/or any government entity that interfered with, or usurped, his parental rights."

**¶20** A parent may sue a governmental entity or official for usurping or interfering with fundamental parenting rights. A.R.S. § 1-602(E). In the action, the governmental entity or official has the burden of proving "[t]hat the interference or usurpation is essential to accomplish a compelling government interest of the highest order" and the government's interference or usurpation "is narrowly tailored and is not otherwise served by a less restrictive means." *Id.* § 1-602(F)(1), (2). The government may usurp or interfere with fundamental parental rights only by proving both elements. *Id.* § 1-602(G). But the Parents' Bill of Rights does not "prohibit courts, law enforcement officers or employees of a government agency responsible for child welfare from acting in their official capacity within the scope of their authority." A.R.S. § 1-602(B).

**¶21** Thus, we must decide whether the Parents' Bill of Rights limits common law or statutory immunity. We review statutory interpretation *de novo. Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 194, ¶ 6 (2016). "We interpret statutes to give effect to the legislature's intent." *Id.* at 195, ¶ 9 (quotation omitted). If the statute's plain language is clear, we apply it unless the result is absurd or unconstitutional. *Id.* And "[w]hen possible, we seek to harmonize statutory provisions and avoid interpretations that result in contradictory provisions." *Id.*

**¶22** The Parents' Bill of Rights created a private right of action for parents to sue government entities and officials for usurping or interfering with fundamental parental rights. *See* A.R.S. § 1-602. But nothing in A.R.S. § 1-601 or § 1-602 waives, limits, or abrogates existing statutory or common law immunities. We "will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions." *Roberts v. State*, 253 Ariz. 259, 266, ¶ 20 (2022) (quoting *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965)). Had the legislature intended to exclude common law or statutory immunity from Parents' Bill of Rights claims, it could have done so explicitly. *See id.* (We "will not read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself.").

**¶23** Thus, statutory and judicial immunity applies to A.R.S. § 1-602 claims, and the superior court did not err by finding the judge and

prosecutors were immune from Rogut's claims.[4] Additionally, because the employees had immunity and were dismissed from the case with prejudice, the City was not vicariously liable for the claims. *See Laurence v. Salt River Project Agric. Improvement & Power Dist.*, 255 Ariz. 95, 106, ¶ 44 (2023) ("Dismissing a tort claim against an employee because the claim lacks merit requires the court to also dismiss a claim against an employer under the doctrine of respondeat superior."); *Stoner v. Ariz. Dep't of Econ. Sec.*, No. CV-24-1034-PHX-DGC, 2024 WL 2746978, at *3 (D. Ariz. May 29, 2024) (Dismissal for failure to state a claim because of immunity is a judgment on the merits.).

**B.      The Notice-of-Claim Statute and Statute of Limitation Barred Rogut's Claims Arising from the Officers' Conduct.**

**¶24**      The superior court found that either the 180-day notice-of-claim requirement or the one-year statute of limitation barred the claims against the City and its police officers. Rogut argues this finding was error.

**¶25**      Rogut contests the court's application of the time limits in A.R.S. §§ 12-821.01 and 12-821. Under A.R.S. § 12-821.01(A), a person with a claim against a public entity or employee must file a notice of the claim with someone authorized to accept service within 180 days after the cause of action accrues. "The purpose of the statute is to provide the government entity with an opportunity to investigate the claim, assess its potential liability, reach a settlement prior to litigation, budget and plan." *Havasupai Tribe v. Ariz. Bd. of Regents*, 220 Ariz. 214, 223, ¶ 30 (App. 2008). The claim is barred unless the notice of claim is lawfully served on the public entity. *Id.* "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. § 12-821.01(A)." *Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, 527, ¶ 10 (2006).

**¶26**      Under A.R.S. § 12-821, "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues." "[A] cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B); *see also Dube v. Likins*, 216

---

[4]      Rogut also suggests that the Parents' Bill of Rights excludes the use of "*any* affirmative defense." For the same reasons explained above, we disagree.

Ariz. 406, 421-22, ¶¶ 1-5 (App. 2007) (supplemental opinion) (applying the same accrual standard to A.R.S. § 12-821); *Boyd v. State*, 256 Ariz. 414, 418, ¶ 10 (App. 2023). Accrual of a claim under the notice-of-claim statute does not require the plaintiff to have facts sufficient to file a complaint. A.R.S. § 12-821.01; *Humphrey v. State*, 249 Ariz. 57, 65, ¶ 28 (App. 2020) (The claim accrual is not tolled to allow a plaintiff to develop facts sufficient to file a complaint.).

¶27    Rogut sued the City officers for "(1) defamation; (2) intentional infliction of emotional distress; (3) negligence; and (4) for claims arising in tort." Rogut stated that "[t]he police knowingly, willfully, maliciously, and repeatedly tampered with their own records, lied to the prosecutor's office, withheld or destroyed exculpatory evidence, and lied to the court."

¶28    In the complaint, Rogut described the police officers' actions. According to Rogut, in May 2019, he reported to the City police that his ex-wife's boyfriend threatened him, but the police did not have the report when he requested it in September 2019. Also, in May 2019, Rogut's ex-wife called the City police and had him removed from property he claimed he had an interest.

¶29    Throughout December 2019, Rogut's ex-wife communicated with the City police to report and submit evidence of protective order violations and harassment. An officer submitted charges against Rogut for violating the protective order. Rogut reported incidents of public records tampering and false reporting of criminal charges to the Attorney General's Office and the City police department but received no relief.

¶30    Rogut's ex-wife reported protective order violations to the police in February and March 2020. Around this time, while Rogut was at the police station for fingerprinting, the police allegedly "attempted to create evidence in order to frame [Rogut] for felony theft." The police investigated another alleged protective order violation in April 2020, an alleged assault in June 2020, and a reported theft in June 2020. Rogut's ex-wife reported more protective order violations to the police in July and August 2020. Finally, officers submitted petitions for injunctions against harassment and for Rogut to receive a mental health evaluation in June 2022, which the court granted.

¶31    The superior court calculated Rogut's notice-of-claim and statute-of-limitation deadlines from the dates alleged in the complaint. The court started with the notice-of-claim statute, noting that Rogut mailed the

claim to the City on May 16, 2023.[5] Thus, any cause of action that accrued before November 17, 2022, was time-barred. *See* A.R.S. § 12-821.01(A). All of the officers' alleged conduct occurred before this date.

**¶32**     The court then addressed the statute-of-limitation argument. Rogut filed the complaint on April 17, 2023, meaning any cause of action against the City or its employees that accrued before April 17, 2022, was also barred by the statute of limitation for claims against a public entity or employee. *See* A.R.S. § 12-821.

**¶33**     Rogut argues that because many of his claims were based on criminal acts, A.R.S. § 12-511(A) extended the statute of limitation to "one year from the final disposition of the criminal proceedings." But A.R.S. § 12-511(A) only applies when a defendant is criminally charged and the crime victim files a civil suit against the defendant. Rogut did not allege that the City or its employees faced criminal charges in his complaint. Instead, he states on appeal that he "looks forward to the commencement of criminal proceedings" against the City. A.R.S. § 12-511 does not apply.

**¶34**     Rogut correctly points out that the date of alleged tortious conduct is not always the same as when the action accrues. But Rogut reasonably should have known the cause of his damage from the claims when the officers' conduct occurred. *See* A.R.S. § 12-821.01(B). At the very latest, he reasonably should have learned of the alleged damage from the officers' conduct when he was criminally charged throughout 2020 and the subject of the petitions in June 2022. *See id.*

**¶35**     Rogut submitted the notice of claim to the City untimely and failed to serve a notice of claim on any of the individual officers. Moreover, the one-year statute of limitation barred many of his claims, and there was

---

[5]     Generally, the claimant must lawfully serve the notice of claim in compliance with the Arizona Rules of Civil Procedure. A.R.S. § 12-821.01(A); *see also Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 61, ¶ 20 (App. 2010). But, as noted above, the City waived service by voluntarily appearing.

no basis for the remaining claims. The superior court did not err by dismissing Rogut's claims.[6]

## C.   We Need Not Decide Whether Rogut Had to Submit His Notice of Claim Before Filing the Complaint.

¶36        Rogut challenges the superior court's finding that he improperly submitted his notice of claim after he filed the complaint. Rogut asserts that "[n]othing in the language of A.R.S. § 12-821.01 statutorily bars anyone from filing a claim with the Court prior to providing notice of claim." But our courts have said the statute requires the plaintiff to file the notice of claim before suing. *See, e.g.*, *Donovan v. Yavapai County Cmty. Coll. Dist.*, 244 Ariz. 608, 610, ¶ 7 (App. 2018) (Filing the notice of claim is a "necessary prerequisite to filing a lawsuit against a public entity."); *see also Yahweh v. City of Phoenix*, 243 Ariz. 21, 23, ¶ 7 (App. 2017) ("Before suing an Arizona public entity, a claimant must submit a [notice of claim] that complies with § 12-821.01."). We need not resolve this dispute because the superior court correctly dismissed the claims for other reasons explained above, and the complaint's "defects [were] not curable by an amendment of the pleadings." Thus, the issue is moot.

¶37        Relatedly, Rogut also argues the City erred by appearing and raising the notice-of-claim violation before Rogut lawfully served the complaint. But a party may waive service of process by voluntarily appearing. *Cf. Ellman Land Corp. v. Maricopa County*, 180 Ariz. 331, 336 (App. 1994). Nothing required the City to wait until the complaint's service deadline to appear. Contrary to Rogut's assertion, the City did not commit misconduct by voluntarily appearing to defend against the complaint.

## D.   The Superior Court Did Not Err by Denying Leave to Amend the Complaint.

¶38        Rogut argues that the superior court "could have granted [his] request to amend the initial complaint, which the lower court determined contains incurable defects." To be sure, a court can grant a

---

[6]        Also, absolute prosecutorial immunity barred many claims against the officers. "[A]bsolute immunity extends to agency officials who perform functions analogous to a prosecutor." *Ford*, 186 Ariz. at 298. Though the officers would not be entitled to immunity for their investigative functions, the claims arising from the officers' submission of charges and petitions to the court were barred by absolute immunity. *See id.* at 298-99.

request to amend a complaint. *Deutsche Bank Nat'l Tr. Co. v. Pheasant Grove LLC*, 245 Ariz. 325, 331, ¶ 19 (App. 2018). But Rogut develops no argument for why the court erred by denying leave to amend. And the superior court may also deny leave to amend if the amendment is futile. *See id.* (Because the statute of limitations barred the claim, an amendment clarifying the relief sought would have been futile.). We discern no error.

**¶39**      For the first time in this proceeding, Rogut asks that we grant leave to amend his complaint to add a new cause of action under A.R.S. § 13-2314.01(A). Though Rogut broadly asked the superior court for more time to "enumerate each individual cause of action and claim for relief," he never requested leave from the superior court to add a cause of action under A.R.S. § 13-2314.01(A). Generally, we will not consider issues not raised below. *See Harris v. Cochise Health Sys.*, 215 Ariz. 344, 349, ¶ 17 (App. 2007). Even so, considering the complaint's procedural defects, the amendment would be futile. *See Deutsche Bank*, 245 Ariz. 325, 331, ¶ 19. We will not remand for the superior court to consider an amendment.

**E.      We Lack Jurisdiction to Review the Superior Court's Dismissal Without Prejudice for the Claims Against the Unserved Defendants.**

**¶40**      Rogut argues the superior court erred by denying his requests for accommodations to serve the other defendants in the suit. He claims the superior court could have given him more time to serve all the defendants, and it could have approved alternative service methods.

**¶41**      The superior court dismissed the claims against the other defendants without prejudice. "[A] dismissal without prejudice is only appealable if the dismissal results in finality." *Bank of New York Mellon v. Dodev*, 246 Ariz. 1, 7, ¶ 19 (App. 2018); *see also* A.R.S. § 12-2101(A)(3) (We have jurisdiction over an appeal "[f]rom any order affecting a substantial right made in any action when the order in effect determines the action and prevents judgment from which an appeal might be taken."). For example, a dismissal without prejudice entered after the statute of limitation has run is appealable if a savings statute does not apply because the order "in effect determines the action." *Garza v. Swift Transp. Co.*, 222 Ariz. 281, 284, ¶ 15 (App. 2009) (quoting *McMurray v. Dream Catcher USA, Inc.*, 220 Ariz. 71, 74, ¶ 4 (App. 2009)).

**¶42**      Rogut does not argue that the statute of limitation bars refiling the claims against the other defendants. *See McMurray*, 220 Ariz. at 74, ¶ 4. Nor does he allege he has no relief under a savings statute. *See id.* And he provides no reason why the judgment against the other defendants

is final. As a result, we lack jurisdiction to address the dismissal without prejudice about Rogut's claims against the defendants other than the City and its employees. *See id*.

**CONCLUSION**

**¶43**        We affirm.[7]



AMY M. WOOD • Clerk of the Court
FILED:    AGFV

---

[7]        In his reply brief, Rogut requested oral argument "[s]hould this Court have questions." *But see* ARCAP 18(a) (The party must file a *separate* request for oral argument.). In any event, oral argument would not help resolve the case. *See* ARCAP 18(b)(3).